**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUY COFFMAN,<br><br>　　Plaintiff,<br><br>　　v.<br><br>AEROJET ROCKETDYNE HOLDINGS, INC., KEVIN P. CHILTON, THOMAS A. CORCORAN, EILEEN P. DRAKE, JAMES R. HENDERSON, WARREN G. LICHTENSTEIN, LANCE W. LORD, AUDREY A. MCNIFF, and MARTIN TURCHIN,<br><br>　　Defendants. | Case No:<br><br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Guy Coffman ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.　This is an action against Aerojet Rocketdyne Holdings, Inc. ("Aerojet" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Aerojet by Lockheed Martin Corporation ("Lockheed Martin") and Mizar Sub, Inc., a wholly owned subsidiary of Lockheed Martin.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company maintains facilities in this District, including in Carlstadt, New Jersey according to the Company's Form 10-K for the fiscal year ended December 31, 2019.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Aerojet's common stock.

7. Defendant Aerojet designs, develops, manufactures, and sells aerospace and defense products and systems in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "AJRD."

8. Defendant Kevin P. Chilton ("Chilton") is a director of the Company.

9. Defendant Thomas A. Corcoran ("Corcoran") is a director of the Company.

10. Defendant Eileen P. Drake ("Drake") is Chief Executive Officer, President, and a director of the Company.

11. Defendant James R. Henderson ("Henderson") is a director of the Company.

12. Defendant Warren G. Lichtenstein ("Lichtenstein") is Chairman of the Board of the Company.

13. Defendant Lance W. Lord ("Lord") is a director of the Company.

14. Defendant Audrey A. McNiff ("McNiff") is a director of the Company.

15. Defendant Martin Turchin ("Turchin") is a director of the Company.

16. Defendants Chilton, Corcoran, Drake, Henderson, Lichtenstein, Lord, McNiff, and Turchin are collectively referred to herein as the "Individual Defendants."

17. Defendants Aerojet and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. The Proposed Transaction**

18. On December 20, 2020, Aerojet issued a press release announcing that it had entered into a definitive agreement to be acquired by Lockheed Martin in an all-cash transaction. Under the terms of the agreement, Lockheed Martin would acquire Aerojet for $56.00

per share in cash. The press release states, in pertinent part:

### Aerojet Rocketdyne to be Acquired by Lockheed Martin in $5.0 Billion All-Cash Transaction

December 20, 2020 18:46 ET | **Source:** Aerojet Rocketdyne, Inc.

*Purchase Price Represents a Premium of Approximately 33%*

*Companies' Complementary Capabilities and Talent to Enable Growth in Hypersonics, Tactical Missiles, Integrated Air and Missile Defense, Strategic Systems and Space Exploration*

*Transaction Provides Greater Value and Innovation for Customers by Integrating Critical Component of Supply Chain*

EL SEGUNDO, Calif., Dec. 20, 2020 (GLOBE NEWSWIRE) -- Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) today announced that it has entered into a definitive agreement to be acquired by Lockheed Martin Corporation (NYSE: LMT) in an all-cash transaction with a total equity value of $5.0 billion.

Under the terms of the agreement, which has been unanimously approved by each company's Board of Directors, Lockheed Martin will acquire Aerojet Rocketdyne for $56.00 per share in cash, representing a premium of approximately 33% to Aerojet Rocketdyne's closing stock price on December 18, 2020, and a premium of approximately 42% to the Company's volume weighted average stock price ("VWAP") for the last 90 trading days.

As part of the transaction, Aerojet Rocketdyne declared a $5.00 per share pre-closing special dividend to holders of its common shares and convertible senior notes, on an as-converted basis. The special dividend will be paid on March 24, 2021, to holders of record as of March 10, 2021. The payment of this special dividend, unless revoked, will adjust the consideration to be paid by Lockheed Martin to $51.00 per share at closing.

\*   \*   \*

The transaction is expected to close in the second half of 2021 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by Aerojet Rocketdyne's stockholders. A transition team will be formed to allow for a seamless integration and ensure continuity for customers, employees and other stakeholders.

**Advisors**

Citigroup Global Markets Inc. and Evercore were co-lead financial advisors to Aerojet Rocketdyne. Jenner & Block LLP acted as M&A counsel and Gibson, Dunn & Crutcher LLP acted as Securities counsel.

**About Aerojet Rocketdyne**

Aerojet Rocketdyne, a subsidiary of Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD), is a world-recognized aerospace and defense leader that provides propulsion systems and energetics to the space, missile defense and strategic systems, and tactical systems areas, in support of domestic and international customers.

19.     On January 25, 2021, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

20.     The Proxy Statement, which recommends that Aerojet shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by the Company's financial advisors, Citigroup Global Markets Inc. ("Citi") and Evercore Group L.L.C. ("Evercore"), in connection with their fairness opinions; and (iii) the sales process leading up to the Proposed Transaction.

21.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board of Directors and Reasons for the Merger; (iii) Opinion of Citigroup Global Markets Inc.; (iv) Opinion of Evercore Group L.L.C.; and (v) Certain Unaudited Prospective Financial Information.

22.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Aerojet

shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Company's Financial Projections

23.     The Proxy Statement omits material information concerning the Company's financial projections.

24.     The Proxy Statement provides purported summaries of the Company's "Base Case Forecast," "Adjusted Base Case Forecast," "Risk Adjusted Case Analysis," and "Management Presentation Forecast" (collectively, the "Projections"). The Projections include purported tables of adjustments made to the Base Case Forecast and Adjusted Base Case Forecasts by Citi and Evercore.

25.     With respect to the Projections, the Proxy Statement fails to disclose the following: (1) all line items underlying (i) Total Revenue, (ii) EBITDA, (iii) Unlevered Free Cash Flow, (iv) Adjusted EBITDA, and (v) Adjusted Unlevered Free Cash Flow; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

26.     When a company discloses non-GAAP financial metrics in a Proxy Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures

as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

27. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning the Financial Advisors' Analyses**

29. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Citi and Evercore.

30. The valuation methods, underlying assumptions, and key inputs used by Citi and Evercore in rendering their purported fairness opinions must be fairly disclosed to Aerojet shareholders. The description of Citi's and Evercore's fairness opinions and analyses, however,

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Feb. 4, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

fail to include key inputs and assumptions underlying those analyses. Without the information described below, Aerojet shareholders are unable to fully understand Citi's and Evercore's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### A. *Citi's Analyses*

31. The Proxy Statement fails to disclose the following concerning Citi's "*Discounted Cash Flow Analysis*": (1) all line items underlying the unlevered after-tax free cash flows that Aerojet was forecasted to generate during the fourth quarter of the fiscal year ending December 31, 2020 through the full fiscal year ending December 31, 2029; (2) the range of estimated terminal values for Aerojet; (3) the individual inputs and assumptions underlying the (i) illustrative range of perpetuity growth rates of 2.0% to 3.0%, (ii) discount rates ranging from 7.8% to 9.0%, (iii) 2.7% after tax cost of debt, and (iv) 0% perpetuity growth rate; (3) Aerojet's net debt and other as of September 30, 2020; (4) the number of shares of Aerojet common stock outstanding on a fully diluted basis; (5) the CAS reimbursements and cash pension contributions/OPEB payments; and (6) the net environmental remediation cash flows and real estate cash flows.

32. The Proxy Statement fails to disclose the following concerning Citi's "*Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) illustrative one year forward adjusted firm value to Adjusted EBITDA multiples of 9.5x to 10.9x, and (ii) discount rate of 8.7%; (2) Aerojet's estimated net debt and other for each period ending as of December 31, 2021, 2022, and 2023; and (3) the number of shares of Aerojet common stock outstanding on a fully diluted basis.

33. With respect to Citi's analysis of Wall Street research analysts' one-year forward price targets, the Proxy Statement fails to disclose: (1) the individual price targets observed by Citi in its analysis; and (2) the sources thereof.

34. With respect to Citi's analysis of premia paid for certain acquisition transactions, the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

### B. *Evercore's Analyses*

35. The Proxy Statement fails to disclose the following concerning Evercore's "*Discounted Cash Flow Analysis*": (1) all line items underlying the standalone unlevered, after-tax free cash flows that Aerojet was forecasted to generate during Aerojet's fiscal years 2021 through 2029; (2) the net environmental remediation cash flows and real estate cash flows; (3) the terminal values for Aerojet; (4) the individual inputs and assumptions underlying the (i) perpetuity growth rates of 2.0% to 3.0%, and (ii) discount rates ranging from 7.50% to 8.75%; (5) Aerojet's total debt, cash and marketable securities and net environmental asset position resulting from government and other reimbursements that Aerojet management projects will more than fully offset Aerojet's payments related to its environmental remediation liabilities as of September 30, 2020; (6) Aerojet's present value of forecast cash contributions to fund pension liabilities, net of federal government reimbursement for certain pension expenses, for fiscal years 2021 through 2029; (7) Aerojet's average estimated present value of real estate; and (8) the number of fully diluted shares of Aerojet common stock.

36. With respect to Evercore's "*Equity Research Analyst Price Targets*" analysis, the Proxy Statement fails to disclose: (1) the individual price targets observed by Evercore in its analysis; and (2) the sources thereof.

37. The Proxy Statement fails to disclose the following concerning Evercore's

"*Illustrative Present Value of Future Share Price*": (1) Aerojet's estimated calendar year 2024 EPS; and (2) the individual inputs and assumptions underlying the (i) range of illustrative price-to-earnings ratios of 20.6x to 22.6x, and (ii) discount rates ranging from 8.25% to 9.25%.

38. With respect to Evercore's "*Premiums Paid Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

39. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Proxy Statement provides that, during the sales process, Aerojet was engaged in or was interested in engaging in discussions with Companies A through E concerning a potential strategic transaction.

41. The Proxy Statement, however, fails to disclose whether Aerojet executed confidentiality agreements with Companies A through E, and if so, the terms thereof, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude Companies A through E from making superior offers for the Company.

42. Without this information, Aerojet shareholders may have the mistaken belief that Companies A through E were or are permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Aerojet shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

43. The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

47. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

    C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

    D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 4, 2021                        Respectfully submitted,

                                                **HALPER SADEH LLP**

                                                /s/ Zachary Halper
                                                Zachary Halper, Esq.
                                                186 Darwin Lane
                                                North Brunswick, NJ 08902
                                                Telephone: (212) 763-0060
                                                Facsimile: (646) 776-2600
                                                Email: zhalper@halpersadeh.com

                                                Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
                                                667 Madison Avenue, 5th Floor
                                                New York, NY 10065
                                                Telephone: (212) 763-0060
                                                Facsimile: (646) 776-2600
                                                Email: sadeh@halpersadeh.com

                                                *Counsel for Plaintiff*